UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD CECIL
STALLINGS,

                  Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.

_____/

Civil Action No.: 18-12136
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 14]

Plaintiff Leonard Cecil Stallings appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability income benefits (DIB) under the Social Security Act.  Both parties have filed summary judgment motions, and Stallings filed a reply motion, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  The Court **RECOMMENDS** that:

- Stallings' motion **[ECF No. 11]** be **GRANTED;**

- the Commissioner's motion **[ECF No. 14]** be **DENIED**; and

- the Commissioner's decision be **REMANDED FOR FURTHER CONSIDERATION** under sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Stallings' Background and Disability Application

Born October 5, 1954, Stallings was 61 years old on the date of application.  [ECF No. 9-5, Tr. 179].  He alleges an amended disability onset date of February 1, 2014.  [ECF No. 9-2, Tr. 32-33].  Stallings was insured for DIB until June 30, 2017.  [ECF No. 11, PageID.543].

After a hearing on November 8, 2017, during which Stallings and a vocational expert (VE) testified, the ALJ found that Stallings was not disabled.  [ECF No. 9-2, Tr. 29-55].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  [*Id.*, Tr. 1-4].  Stallings timely filed for judicial review.  [ECF No. 1].  It is undisputed that Stallings raised no Appointments Clause challenge before the Commissioner.

## II.  ANALYSIS

### A. APPOINTMENTS CLAUSE CHALLENGE

The Court will begin by addressing Stallings' argument that his case should be remanded for a *de novo* administrative hearing because the ALJ was not properly appointed according to the Appointments Clause.  U.S. Const., Art. II, § 2, cl. 2.  Stallings' argument flows from *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018), which held that ALJs are "Officers of the United

States" under the Appointments Clause, and thus must be appointed by "the President, a court of law, or a head of department."

Lucia dictates that a party making "a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id.* at 2055. Although *Lucia* specifically addressed only Security and Exchange Commission ALJs, the Solicitor General has acknowledged that the Supreme Court's holding encompassed all ALJs, and the Acting Commissioner of Social Security ratified the appointment of its ALJ's in July 2018 to address any Appointments Clause deficiency going forward. *Page v. Comm'r of Soc.Sec.*, 344 F.Supp.3d 902, 903 (E.D. Mich. 2018). And here, the Commissioner does not argue that the ALJ was properly appointed at the time of Stallings' hearing; it contends only that Stallings has forfeited this claim for relief by failing to present it at the administrative level. [*See* ECF No. 14, PageID.584].

Stallings' contends that forfeiture is inappropriate here because the ALJ lacked legal authority to address questions of constitutionality. [ECF No. 11, PageID.560-61]. He cites *Jones Bros., Inc. v. Sec'y of Labor*, in which the court excused the forfeiture of the Appointments Clause claim, reasoning that it could not "fault a petitioner for failing to a raise a facial

constitutional challenge in front of an administrative body that could not entertain it." 898 F.3d 669, 674 (6th Cir. 2018). And Stallings cited *Bizarre v. Berryhill*, which departed from the "emerging consensus" by finding: (1) the ALJs were not granted the power to resolve constitutional challenges; (2) claimants may, but are not required, to raise Appointments Clause issues before the Appeals Council; and (3) the Social Security Administration does not have a statute mandating forfeiture. 364 F. Supp. 3d 418 (M.D. Pa. 2019). The court in *Bizarre* highlighted the fact that "[its] disagreement breaks from the emerging consensus of federal courts." *Id.* at 420.

The emerging consensus, including in this district, is that a party has forfeited an Appointment Clause claim if it is not raised at the administrative level. *See Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558 (E.D. Mich. 2019) (collecting cases) (holding that objections to administrative agency proceedings must be made "while [the agency] has the opportunity for correction in order to raise issues reviewable by the courts"). Given that consensus, Stallings' Appointments Clause challenge cannot be sustained.

**B. THE ALJ'S DECISION**

The Court will next address Stallings' argument that the ALJ erred in deciding that Stallings is not disabled.

**1.**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.

5

*Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Stallings was not disabled. At the first step, she found that Stallings had not engaged in substantial gainful activity from his onset date to his last insured date. [ECF No.9-2, Tr. 14]. At the second step, she found that Stallings had the severe impairments of "mild degenerative joint disease of the right knee; mild degenerative disc disease; obesity; major depressive disorder; and anxiety." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 15].

Between the third and fourth steps, the ALJ found that Stallings had the RFC to perform medium work,[1] except

> he is limited to a low stress environment, defined as no quick

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," and standing and walking for a total of about six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b) & (c); SSR 83-10, 1983 WL 31251.

> decision making and no quick judgment required on the job; no interaction with the public and only occasional interaction with coworkers and supervisors; would be unable to perform jobs that are fast pace, high production, or frequent changes in task expectations or locations; and could only stoop, squat, climb, balance, crouch, crawl, or kneel occasionally.

[*Id.*, Tr. 16].

At step four, the ALJ found that Stallings was unable to perform any past relevant work as a data communications technician.  [*Id.*, Tr. 21].  But after considering Stallings age, education, work experience and RFC, the ALJ found that he could perform work in the national economy, including representative occupations such as an industrial sweeper, and that Stallings was thus not disabled.  [*Id.*, Tr. 22-23].

**2.**

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Stallings argues that the finding that he can perform medium work was not supported by substantial evidence.  [ECF No. 11, PageID.547-56]. He contends that the ALJ rejected every expert opinion about his RFC and rejected those opinions based on her own lay interpretation of x-ray imaging.  [*Id.*, PageID.551, 553].  The Commissioner counters that "the ALJ supportably relied on a lack of objective evidence and treatment" to conclude that Stallings could perform a limited range of medium work. [ECF No. 14, PageID.576-77].  To support this argument, the Commissioner emphasizes a February 2016 x-ray showing that Stallings had mild disc space narrowing in his lumbar spine and mild degenerative joint disease in his right knee.  [ECF No. 14, PageID.576-83; ECF No. 9-7, Tr. 386].

As described below, the ALJ stated good reasons for giving limited weight to the opinions of Stallings' treating doctors, but the Court agrees with Stallings that the ALJ erred by interpreting the raw medical data to reject every medical opinion about his need for a cane.

8

**3.**

An ALJ is required to consider every medical opinion of record.  20 C.F.R. § 404.1527.  And, ordinarily, the "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.

In November 2015, Hershel Sandberg, M.D., wrote that Stallings had a permanent condition that required him to "use a wheelchair, walker, crutch, brace, or other ambulatory aid to walk."  [ECF No. 9-7, Tr. 294].  In April 2016, independent medical examiner Leonidas Rojas, M.D., found that Stallings had advanced degenerative disease of the right knee, that his gait was not stable or within normal limits, and that the "clinical evidence support[s] the need for a walking aid."  [*Id.*, Tr. 431, 433].  The following October, treating physician Pradeep Khanal, M.D., prescribed Stallings a cane.  [*Id.*, Tr. 444].

In February 2017, Dr. Khanal opined that Stallings had arthritis in the knees and lower back that caused severe pain, limiting his ability to drive, walk and lift heavy objects.  [*Id.*, Tr. 445].  According to Dr. Khanal,

9

Stallings could lift no more than 15 pounds, could not go grocery shopping, had problems getting up and down the stairs, and ambulated with the assistance of a cane.  [*Id.*].  The following May, Bishr Alhafez, M.D., (the attending physician over Dr. Khanal), wrote that chronic osteoarthritis precluded Stallings from standing or walking more than two hours in a work day, and lifting more than 15 pounds.  [ECF No. 9-8, Tr. 492].  He agreed that Stallings required a cane to ambulate and had problems navigating the stairs, and reported that Stallings had not responded well to physical therapy.  [*Id.*].  In June 2017, Dr. Khanal echoed Dr. Alhafez's opinion and added a restriction to sitting no more than four hours in a workday.  [*Id.*, Tr. 497].

Notably, no state agency medical doctor reviewed Stallings' records and opined on his RFC.  That assessment was made by a single decisionmaker.  [ECF No. 9-3, Tr. 62-63, 69-70].  So no medical opinion supports an RFC for medium work or a finding that Stallings does not need a cane.

**4.**

The ALJ gave little weight to the opinions of Dr. Khanal and Dr. Alhafe, reasoning that those opinions were based primarily on the "claimant's own subjective reports," that there were few substantive

10

treatment notes from the doctors, that the x-ray showed only mild results and that there were no clinical findings of decreased strength or atrophy to support a 15-pound lifting restriction.  [ECF No. 9-2, Tr. 20].

Stallings does not dispute the factual underpinnings of this analysis, but instead cites Social Security Ruling (SSR) 16-3p as indicating that some people experience more pain than might be expected by the objective medical evidence.  2016 WL 1119029, Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016).  SSR 16-3p, in fact, recognizes that a person with a "knee x-ray showing mild degenerative changes" may still experience extreme pain.  *Id.*  Still, the ALJ must give controlling weight to treating physician opinions only if they are well-supported by medically acceptable clinical and diagnostic evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  Dr. Khanal and Dr. Alhafe did not cite any clinical or diagnostic evidence to support their opinions, so the ALJ was not required to give the opinions controlling weight.

**5**.

Stallings also argues that the ALJ mischaracterized Dr. Rojas's opinion when giving it some, but not great weight.  [ECF No. 9-2, Tr. 21]. The Court agrees as it relates to Stallings ability to ambulate.

11

The ALJ described Dr. Rojas's opinion as providing "esoteric and vague responses" that are "not specific enough to reliably determine" Stallings' "work-related functional abilities and limitations."  [*Id.*].  While it is true that Dr. Rojas did not meaningfully address all of Stallings work-related abilities, [see ECF No. 9-7, Tr. 432], he did describe Stallings' knee impairment and his ability to ambulate.

During the physical examination, Dr. Rojas found Stallings to have "mild difficultly standing up from a chair and getting up from a chair," and noted that "[h]e gets around with a cane."  [*Id., Tr. 430*].  The range of motion in Stallings' right knee was limited to 5-70 (normal is 0-150).  [*Id.*, Tr. 431, 435].  His gait was "somewhat guarded, particularly without his cane."  [*Id.*, Tr. 431].  The range of motion in his lumbar spine was also reduced.  [*Id.*, Tr. 434].  Stallings' had advanced degenerative disease of the right knee, his gait was not stable or within normal limits, and "clinical evidence support[ed] the need for walking aid."  [*Id.*, Tr. 431, 433].

The ALJ did not mention Dr. Rojas's opinion that Stallings' had advanced degenerative disease of the right knee, that his gait was unstable or that he required a walking aid.  [ECF No. 9-2, Tr. 18-21].

And when rejecting Dr. Khanal's and Dr. Sandberg's opinions that Stallings required a cane, the ALJ relied exclusively on the x-ray results to

find that a cane was not medically necessary.  [*Id.*, Tr. 18, 20].  She wrote,

"[G]iven the only mild objective abnormalities on imaging studies, I do not

find that the use of a cane is medically necessary," and that she could not

give Dr. Khanal's opinion about Stallings needing a cane more than "little

weight considering that x-rays of the right knee showed only mild

degenerative joint disease." [*Id.*].  So even though the ALJ mentioned

some of Dr. Rojas's examination findings, [*Id.*, Tr. 18], it appears that she

relied on only the x-ray to find that Stallings did not require a cane.  This

was error.

"ALJs must not succumb to the temptation to play doctor and make

their own independent medical findings."  *Simpson v. Comm'r of Soc. Sec.*,

344 F. App'x 181, 194 (6th Cir. 2009).  Under similar circumstances to this

case, the court in *Ray v. Comm'r of Soc. Sec.* found that the ALJ had erred

by relying on his lay opinion to reject the claimant's prescription for a cane.

940 F. Supp. 2d 718, 727–28 (S.D. Ohio 2013).  "By summarily

disregarding Plaintiff's prescribed cane—and not basing such a decision on

any medical opinion of record—the ALJ improperly [substituted] her lay

opinion for that of a doctor who would be qualified to make such a medical

determination." *Id.*

13

The *Ray* court recognized that "there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source."  *Id.*, (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008) ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment")).  The court found that the case before it was not one of those limited occasions because the record included possible reasons supporting the cane prescription.  *Id.* at 728-29.

More recently, in *Mathers v. Berryhill*, No. 3:18-CV-00418-LLK, 2019 WL 1427555, at *3 (W.D. Ky. Mar. 29, 2019), the ALJ had "rejected *every* medical opinion in the administrative record concerning Plaintiff's RFC," including about the plaintiff's need for a cane.  (Emphasis in original).  The *Mathers* court noted that no bright-line rule requires ALJs to always base their RFC findings on a supporting medical opinion; sometimes the claimant has "relatively little physical impairment, such that the ALJ could make a commonsense judgment about Plaintiff's functional capacity."  *Id.* (internal citations, quotation marks and brackets omitted).  In *Mathers*, the

14

evidence showed that the claimant had degenerative disc disease in the neck and back, and degenerative joint disease affecting his knees.  *Id.* at *2.  Under those circumstances, the court found that "the ALJ erred in fashioning an RFC in the absence of a supporting medical opinion."  *Id.* at *4.

The same conclusion applies here.  Similar to the claimant in *Mathers*, Stallings had degenerative disc disease in the back and degenerative joint disease in the right knee.  And Dr. Rojas's examination findings about Stallings' unstable gait, limited range of motion and difficulty getting on an off the examination table are relevant for determining his functional ability.  *See, e.g.,* Listing 1.00E1 (describing examinations of the spine); *Pariscoff v. Comm'r of Soc. Sec.*, No. 2:17-CV-798, 2018 WL 1224515, at *6 (S.D. Ohio Mar. 9, 2018), *adopted,* 2018 WL 1935512 (S.D. Ohio Apr. 24, 2018) (range of motion relevant); *Roche v. Berryhill*, No. 1:17CV177, 2017 WL 6512236, at *22 (N.D. Ohio Dec. 12, 2017), *adopted*, No. 1:17-CV-177, 2017 WL 6502614 (N.D. Ohio Dec. 19, 2017) (unstable gait relevant).  Under these circumstances, the ALJ should have solicited the opinion of a medical expert, ordered another consultative examination or sent Stallings' records back to the state agency for a review by a physician.  *Mathers,* 2019 WL 1427555 at *3; *Gentry v. Comm'r of Soc.*

*Sec.*, No. 1:17 CV 1182, 2018 WL 4305213, at *5 (N.D. Ohio Sept. 10, 2018).

The Commissioner cites *Wilk v. Comm'r of Soc. Sec.*, as finding that the ALJ's assessment that the claimant could perform medium work was supported by an MRI showing mild to moderate abnormalities.  No. 16-14308, 2018 WL 1075072, at *4 (E.D. Mich. Feb. 8, 2018), *adopted,* No. 16-14308, 2018 WL 1071761 (E.D. Mich. Feb. 27, 2018).  But that was "not a case where the ALJ formulated her RFC without the benefit of any opinion evidence," as the ALJ had relied in part on the opinions of a consulting examiner and state agency medical consultant.  *Id.* at *6.  In contrast, this *is* a case in which the ALJ formulated her RFC without benefit of a supporting medical opinion.

The Commissioner also alleges, "Although Dr. Rojas stated that Plaintiff needed a cane to reduce pain, he did not state that a cane was clinically required."  [ECF No. 14, PageID.578].  It is true that Dr. Rojas did not check a box stating that a walking aid is "Needed; Would Fall Without Aid; Clinically Req'd."  But Dr. Rojas checked "yes" when answering whether "*clinical evidence*" supported the "need" for a walking aid, the need being to reduce pain.  [ECF No. 9-7, Tr. 433 (emphasis added)].  [*Id.*].  The

Commissioner cites no authority for finding that, when a cane is "needed" to reduce pain, it is irrelevant to the assessment of a claimant's RFC.

To the contrary, a cane is considered "medically necessary if the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane."  *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013), *adopted*, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013); *see also Simmons v. Comm'r of Soc. Sec.*, No. 1:12CV2591, 2013 WL 3873952, at *10-11 (N.D. Ohio July 25, 2013).

Here, Dr. Rojas's examination findings and the unanimous opinions of the doctors that Stallings needed a cane evidenced more than Stallings' subjective desire to use one.  The ALJ's reliance on her own lay opinion to find that Stallings' had the standing and walking abilities required for medium work was error.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Stallings' motion [ECF No. 11] be **GRANTED,** the Commissioner's motion [ECF No. 14] be **DENIED**; and that this matter be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 31, 2019

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

18

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.